MISSOURI PACIFIC RAILROAD COMPANY *v.* COXWELL.

Opinion delivered July 14, 1930.

*Thomas B. Pryor* and *Harvey G. Combs,* for appellant.

*C. T. Carpenter,* for appellee.

MEHAFFY, J. M. L. Coxwell was in the sanitorium at Booneville, Arkansas, for treatment for tuberculosis, and while there at four o'clock in the morning of May 21, 1929, was stricken with acute appendicitis. He was advised by the doctor in charge of the sanitorium that he had appendicitis, and that he would have to go to some other hospital for an operation, and asked him where he wanted to go. Appellee told him he wanted first to go home and consult with his family doctor. His home was at Corning, Arkansas. The bookkeeper of the sanitorium got in communication with appellee's family physician, Dr. Lattimer, who arranged for appellant's train No. 2 to stop at Corning to let appellee off, and sent appellee a telegram to that effect. At eleven o'clock that night appellee took the train at Booneville for Little Rock. At Little Rock he was transferred to the depot of the Missouri Pacific; the train was in and appellee boarded it. He first went to the conductor and presented to him his ticket and a telegram and told him he wanted a Pullman. The conductor pointed out the Pullman further back, appellee went back to the Pullman, presented his ticket and telegram to the Pullman conductor, who took them and told appellee to get on. The Pullman conductor sold and issued to appellee a Pullman ticket to Corning. When appellee paid his fare, he told the conductor he wanted to be notified in plenty of time to get off, and also that he wanted ice for his ice pack. He was told by the conductor to ask the porter for what he wanted and told the porter to notify appellee in time to get off. Appellee's condition was serious, and he was suffering great pain and ice packs were used to reduce the inflammation and pain. At Knobel, six miles from Corning, the porter notified appellee to get ready to get off at Corning. The train did not stop at the depot, but ran by the station

about three-quarters of a mile and stopped. Appellee told the conductor that the doctor and his family were waiting for him at the depot and he could not go on to Poplar Bluff. The conductor refused to take him back to Corning, and appellee was left to make his way back to Corning, and the walk intensified his suffering and made the pain much more severe. Appellee's family and doctor were waiting for him at the depot at Corning with a car, but when the train failed to stop at Corning they went back home and appellee had to walk home. It took him about an hour to walk home. He was compelled to stop and rest three or four times, and he kept the ice pack on his side all the way. It was about eight o'clock when he got home, and Dr. Lattimer was called to see him. He advised an immediate operation, and he was carried to Poplar Bluff and operated on.

There is some conflict in the testimony as to what took place between appellee and the conductor, but there is no dispute about the fact that the train ran by the station, and that the conductor refused to take appellee back to the station. Numbers of witnesses testified, including physicians, but the above are substantially the facts. Physicians testified to the suffering and also that appellee's having to walk home and being in an upright position, increased his pain. The conductor offered to take him on to Poplar Bluff, and told him there were hospitals and doctors there, but he declined to go and went home.

Appellant first contends that the evidence is insufficient to support the verdict, and that there is no substantial evidence to sustain the verdict. We do not agree with appellant in this contention. The railroad company accepted appellee's ticket to Corning and agreed to stop the train there. They knew he wanted to get off at Corning, and the porter at least knew his condition, and appellee testified that the porter told the conductor about appellee's serious condition. The conductor, however, de-

nies this, but he says he told appellee he was not going to back up but would take him to Poplar Bluff and send him back or he could walk back. It was 27 miles from Corning to Poplar Bluff. While the conductor says he did not know about him having appendicitis, he did testify that when he got off the train he had his hand on his side, and when the conductor asked him what was the matter he told him that his appendix was hurting him, and then was when the conductor told him he had better go on to Poplar Bluff. Appellant argues that, because appellee refused to be carried on to Poplar Bluff but elected to get off, his getting off the train was not the proximate cause of his injury, and that his having to walk back the distance he did was caused by his refusing to be carried to Poplar Bluff, and any extra suffering was not the fault of the appellant. The wrongful conduct of appellant put the appellee where he had to decide at once whether to go on to Poplar Bluff or consult with his family and family physician, and he had a right to make the choice and had a right to consult his family and family physician before having the operation, and whatever suffering and inconvenience was caused by appellant's failure to put appellee off at the station was caused by the wrongful conduct of the appellant, making it liable in damages to appellee. The appellant, having wrongfully carried him beyond the station and put him off, could not require him to go to Poplar Bluff or anywhere else, and could not relieve itself from liability by offering to take him on to Poplar Bluff. The wrongful conduct of appellant was the proximate cause of the injury complained of.

There is no error in the court's instruction. Appellant argues that that part of the instruction which would authorize a jury to find for increased illness is too abstract, and that there is no evidence to show or from which the jury could reasonably infer that there was additional illness. The court did not say additional illness, but said increased illness, and all of the proof shows

that his suffering was increased because of his having to walk back to the station and to his home. It is insisted by appellant that the damages, if any, should have been only nominal, and that it cannot be said that appellant was guilty of negligence. We do not agree with appellant in this contention. There was increased or additional pain and suffering because of the negligence or wrongful conduct of appellant. The undisputed evidence shows that appellant had agreed to stop this train at Corning and did not do so, but it negligently and wrongfully carried appellee beyond the station.

It is also urged that the amount of damages found by the jury is excessive. We do not think so. The verdict was for $1,000, and, when the condition and suffering of appellee is taken into consideration, together with the negligence of appellant which caused it, the amount awarded by the jury appears to be fair.

Appellee has prosecuted a cross-appeal. After the verdict was rendered, appellee asked judgment for a reasonable attorney's fee, which the court did not allow. Appellee contends that the railroad company is liable for attorney's fee because the appellant violated the statute. Corning was not a stop for this particular train; appellant had the right to operate this train without stopping at Corning; it however entered into a special agreement to stop there to permit appellee to get off and violated this agreement. We think it did not violate the statute, and that the statutory provision for attorney's fee has no application here. *K. C. Sou. Ry. Co.* v. *Marx,* 72 Ark. 357, 80 S. W. 579; *Midland Valley Ry. Co.* v. *Horton,* 112 Ark. 125, 165 S. W. 266; *K. C. Sou. Ry. Co.* v. *Tonn,* 102 Ark. 20, 143 S. W. 597; *St. L. S. W. Ry. Co.* v. *Knight,* 81 Ark. 429, 99 S. W. 684; *St. L. I. M. & S. R. Co.* v. *Evans,* 94 Ark. 324, 126 S. W. 1058.

We find no error, and the judgment is affirmed, both on appeal and cross-appeal.